NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1583
_____

UNITED STATES OF AMERICA

v.

JAMAR CANNON,
                              Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-14-cr-00013-012)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 9, 2017

Before: HARDIMAN, KRAUSE, *Circuit Judges*, and STENGEL, *District Judge*.[*]

(Filed: April 13, 2017)
_____

OPINION[*]
_____

[*] The Honorable Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

After entering a conditional guilty plea, Jamar Cannon appeals the District Court's order denying his motion to suppress wiretap evidence of his participation in a cocaine distribution ring. We will affirm.

I

This case arises out of a federal investigation of the Dover, Delaware branch of the Bloods street gang. In September 2012, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating the drug trafficking activities of Dover gang members who referred to themselves as the "Sex, Money, Murder" (SMM) Bloods.

The investigation zeroed in on Edward Sturgis, who was identified as a leader in the gang. In January 2014, ATF agents obtained a wiretap on Sturgis's phone—referred to as Target Telephone #1. That wiretap was intended to uncover the nature, extent, and methods of drug trafficking of Sturgis and others.

One of the anticipated targets was Leshawn Ingram, who was believed to be a large scale dealer of Sturgis's cocaine. As expected, Ingram called Sturgis's phone on multiple occasions during the wiretap from a phone that ATF agents labelled Predecessor Telephone #1. Though Ingram and Sturgis spoke in code during these conversations, ATF agents believed that the discussions were related to cocaine trafficking.

Ingram stopped using Predecessor Telephone #1 after a high-speed chase with Delaware state police. The Government alleged that Ingram then started calling Sturgis from a new phone. That phone—which was activated the day after Ingram's run-in with

police—was referred to as Target Telephone #3. ATF agents then sought and received a wiretap for that phone. During the course of that wiretap, Appellant Jamar Cannon was overheard ordering cocaine from Ingram. Cannon was arrested and charged with possessing cocaine with intent to distribute.

Before trial, Cannon filed a motion to suppress the wiretap evidence, arguing that the Ingram wiretap application did not sufficiently prove necessity or probable cause as required by 18 U.S.C. § 2518(1)(c), (3). The District Court denied the motion and Cannon pleaded guilty, but reserved his right to file this appeal.

## II[1]

Cannon argues that the Government did not prove that the Ingram wiretap was necessary. Specifically, he claims the wiretap application "failed to show that particularized investigative actions were tried and failed as it relate[d] to Leshawn Ingram and target phone #3."[2] Cannon Br. 11.

To establish the necessity of a wiretap, the application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The government's burden to demonstrate necessity

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[2] "We review the district court's approval of the wiretap application for clear error, while exercising plenary review over its legal determinations." *United States v. Bailey*, 840 F.3d 99, 113 (3d Cir. 2016) (citation omitted).

"is not great." *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975). To meet its burden, "[t]he government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997) (quoting *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992)).

Applying these principles, we agree with the District Court that the Ingram wiretap was necessary. First, the Government demonstrated that "normal investigative procedures ha[d] been tried and failed." 18 U.S.C. § 2518(3)(c). For example, attempts at physical surveillance failed because the SMM Bloods' "heightened awareness of the presence of law enforcement" meant that gang members would spot surveillance and flee. Gov't Br. 7–8. Second, the Government showed that "normal investigative procedures . . . reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c). For instance, the use of confidential informants appeared destined to fail because most potential informants declined to cooperate due to fear of reprisal, and the others were not sufficiently familiar with the "organization's methods and structures" to be useful. Gov't Br. 8. Finally, the affidavit proves that certain normal investigative techniques would "be too dangerous." 18 U.S.C. § 2518(3)(c). For example, the Government could not use undercover agents because the SMM Bloods had a "history of violence," Gov't Br. 7, and had "been arrested for crimes including murder, assault, . . . and illegal firearms possession," *id.* at 3 n.2. These facts satisfy the legal standard. *See Williams*, 124 F.3d at 418 ("[T]he inadequacy of other investigative techniques has been proven by

demonstrating such factors as the inability of a confidential informant to gather additional information, . . . the use of evasive tactics by the investigation's targets, and the difficulty of penetrating an organization with a secretive nature and a propensity towards violence.").

Cannon counters that the Government "fails to show that any effort whatsoever was made to investigate Leshawn Ingram [or] his drug operation." Cannon Br. 12. Not so. Ingram had long been on the Government's radar, as evidenced by his inclusion as a target of the original Sturgis wiretap. The Government also gathered considerable evidence regarding Ingram's drug-related activities through his calls to and from Sturgis. And ATF agents had surveilled Ingram and identified him at least twice at the SMM Bloods' main clubhouse.

Cannon next claims the Government did not show necessity "because the investigation of target telephone #3 only lasted approximately five days." Cannon Br. 11. This argument "take[s] an unreasonably narrow view of the scope of this investigation." *United States v. Vento*, 533 F.2d 838, 850 (3d Cir. 1976). The Government was investigating the entire SMM Bloods conspiracy, not just Ingram. Whether or not normal investigative techniques could have garnered evidence sufficient to implicate only Ingram, "such approaches could not show the scope of the conspiracy." *Id.* Indeed, after more than sixteen months of investigation, many of the objectives related to uncovering the scope of the conspiracy had not been achieved. Thus, the Ingram wiretap was properly deemed necessary to achieve the investigation's goals.

5

## III

Cannon also argues that the District Court erred in finding that the Government established probable cause for the Ingram wiretap because "there was no substantial basis to believe that target telephone #3 was at the time of the application being used to commit a crime or about to commit a crime as required by the wiretap act." Cannon Br. 15.

The District Court disagreed, holding that "the issuing judge had a more than substantial basis for concluding that a wiretap of Leshawn Ingram's phone would lead to evidence of the specific drug-trafficking activity described in the affidavit." App. 86. We agree with the District Court. The affidavit shows that Ingram used both Target Telephone #3 and Predecessor Telephone #1 to discuss drug dealing with Sturgis. Although these conversations were in code, the affiant—"an ATF agent with considerable experience in narcotics investigations," App. 86—explained that Ingram and Sturgis arranged drug sales using common euphemisms for cocaine. In addition, the affidavit explained that ATF agents connected Ingram to both Target Telephone #3 and Predecessor Telephone #1 by identifying him at a location shortly after he agreed to meet Sturgis there. Therefore, the issuing judge had a "substantial basis" for the probable cause determination. *See United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

Cannon's arguments to the contrary are not persuasive. First, he claims that "there appear to be absolutely no confirmed calls from target telephone #3 to target telephone #1." Cannon Br. 9. This assertion is based on a misreading of the affidavit, which clearly states that there were sixteen calls between the two numbers over the course of the

wiretap. While Cannon is correct that these calls are not later reproduced in a chart summarizing some of the pen register calls, both declarations are part and parcel of the same affidavit, which is presumptively valid. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). There is simply no reason to treat the pen register summary chart as authoritative but the statement detailing the sixteen calls as "conclusory." *See* Cannon Br. 15.

Second, Cannon argues that there was no probable cause because "[t]here is little if any evidence that target telephone #3 belonged to Leshawn Ingram." Cannon Br. 15. Even if this assertion were true—which it isn't for the reasons we have noted—Cannon still would not prevail. Like search warrants, wiretaps "are directed[] not at persons, but at property." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 553–60 (1978)). So the relevant inquiry is not whether an active criminal owned Target Telephone #3, but rather whether that phone was likely to be used for criminal activity. *See id.* at 1118 ("That the subscriber of the telephone service be suspected of unlawful activity is not a prerequisite to a wiretap authorization."); *see also* 18 U.S.C. § 2518(3)(d) (requiring that "the facilities from which . . . [the] communications are to be intercepted are being used, or are about to be used, in connection with the commission of [a crime]"). The wiretap application stated that Target Telephone #3 had called Sturgis's phone on sixteen occasions in a five day span. The Sturgis wiretap had recorded conversations with a caller using Target Telephone #3 for cocaine trafficking. Regardless of who was on the other side of those calls, probable cause existed for the wiretap of that phone.

\*      \*      \*

For the reasons stated, we will affirm the judgment of the District Court.